UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| WESLEY DOUGLAS, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 4:15-cv-01793-JHE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Wesley Douglas ("Douglas") seeks review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Douglas timely pursued and exhausted his administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Douglas was a thirty-five-year-old male at the time of the Administrative Law Judge's ("ALJ") decision on July 25, 2014. (Tr. 39-40). Douglas has a limited education and no past relevant work.[2] (Tr. 39). Douglas filed an application for SSI on September 17, 2012. (Tr. 26, 193-98). The State Agency denied Douglas' application, and Douglas requested a hearing before

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings including entry of final judgment. (Doc. 12).

[2] As the ALJ noted, Douglas worked a number of jobs in the past, but most were temporary, and he did not always report his income. (*See* tr. 39).

an ALJ. (Tr. 26-40, 85).  After a hearing, the ALJ denied Douglas' claim on July 25, 2014.  (Tr. 26-40).  Douglas sought review by the Appeals Council, but it declined his request on August 13, 2015.  (Tr. 1-5).  On that date, the ALJ's decision became the final decision of the Commissioner.  Douglas then initiated this action on October 14, 2015. (Doc. 1).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). This court will determine the ALJ's decision is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*  Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo*, "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been

---

[3] In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations found in quoted court decisions.

conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for SSI as well as establish entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i–v). The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform his past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2010); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, [he] will automatically be found disabled if [he] suffers from a listed impairment. If the claimant does not

---

[4] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, revised April 1, 2013.

have a listed impairment but cannot perform [his] work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993), *overruled in part on other grounds*, *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); accord *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

### IV. Findings of the Administrative Law Judge

At Step One, the ALJ found Douglas has not engaged in substantial gainful activity since the application date. (Tr. 28). At Step Two, the ALJ found Douglas had the following severe impairments: asthma, hypertension, obesity, borderline intellectual functioning, panic disorder, and schizophrenia. (*Id.*). At Step Three, the ALJ found Douglas does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 32).

Before proceeding to Step Four, the ALJ determined Douglas' residual functioning capacity ("RFC"), which is the most a claimant can still do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Douglas has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) except that he is unable to climb ladders, ropes, or scaffolds; can tolerate no exposure to unprotected heights and no more than occasional exposure to pulmonary irritants such as dust, fumes, odors, etc.; and requires work involving no more than remembering, understanding, and carrying out simple instructions; occasional decision-making; infrequent changes; and occasional interaction with the general public. (Tr. 35).

At Step Four, the ALJ determined Douglas has no past relevant work. (Tr. 39). At Step Five, the ALJ determined, based on Douglas' age, education, work experience, and RFC, that jobs

exist in significant numbers in the national economy Douglas can perform. (Tr. 39-40). Therefore, the ALJ determined Douglas is not disabled and denied his claim. (Tr. 40).

## V. Analysis

This Court is limited in its review of the Commissioner's decision in that the Commissioner's findings of fact must be reviewed with deference. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Graham v. Bowen*, 790 F.2d 1572, 1574-75 (11th Cir. 1986)). In contrast to factual findings, the Commissioner's conclusions of law are subject to an "exacting examination" or *de novo* review. *See Martin*, 894 F.2d at 1529 (citing *Graham*, 790 F.2d at 1574-75) ("The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal.") (citations omitted). In particular, this court has a "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *See Walden v. Schweiker*, 672 F.2d 835, 838(11th Cir. 1982) (emphasis added) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted). The court must review the Commissioner's decision and determine whether it is supported by substantial evidence and he applied the correct legal standards. *Wilson*, 284 F.3d 1221.

Douglas alleges two errors with the ALJ's decision. (Doc. 14 at 2). Specifically, Douglas contends (1) the ALJ improperly determined his impairments did not meet or equal Listings 12.05B or 12.05C; and (2) the ALJ improperly discounted the opinion of Dr. David Wilson. (*Id.*).

**A. The ALJ Properly Determined Douglas' Impairments Did Not Meet or Equal a Listing**

At Step Three of the sequential evaluation process, the plaintiff has the burden of proving he has an impairment that meets or equals a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). Listing 12.05 sets forth the requirements for intellectual disability or "mental retardation."[5] To meet Listing § 12.05, the plaintiff must show that his impairments satisfy *both* the diagnostic description of intellectual disorder in the introductory paragraph *and* any one of the four sets of additional criteria in subparagraphs A through D. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1., § 12.00(A); 20 C.F.R. § 416.925(c)(3).

The introductory paragraph of Listing 12.05 states as follows:

> Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. This diagnostic description is consistent with accepted medical standards, which recognize that a diagnosis of intellectual disability (or "mental retardation") must be based on significant deficient or impairments in adaptive functioning manifested in the developmental period, as well as IQ scores. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 42 (4th ed. 2000, Text Revised) ("DSM-IV-TR"). The DSM-IV-TR explains that adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet standards of personal independence expected of someone in their particular age group, sociocultural background, and

---

[5] On September 26, 2016, the Social Security Administration published new rules updating how it will evaluate mental disorders, which went into effect on January 17, 2017. *See* 81 Fed. Reg. 66137 (Sept. 26, 2016).

community setting." *Id.* at 42. The required level of severity is met when the requirements in paragraph A, B, C, or D are satisfied. *See* § 12.05.

Douglas specifically contends the ALJ erred by not finding his impairments met or equaled 12.05B and/or 12.05C. (*See* doc. 14 at 19). Paragraph B requires "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B. Paragraph C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation on function." *Id*. at § 12.05C.

As the Commissioner points out, Douglas bases his Listing argument exclusively on the full-scale IQ score of 56 on the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") assessed by David Wilson, Ph.D., a psychological consultative examiner. (Tr. 916-21). However, as thoroughly discussed in his decision, the ALJ discounted Dr. Wilson's IQ assessment and score, finding that Dr. Wilson did not comment on the validity of the score. (Tr. 31); *see Lax v. Astrue*, 489 F.3d 1080, 1086-87 (10th Cir. 2007) (affirming the rejection of IQ scores where examiners declined to vouch for their validity and scores were inconsistent with other evidence of the claimant's ability).

Listings 12.05B and 12.05C require the IQ score be *valid*. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.05B, 12.05C. Although Dr. Wilson indicated he believed Douglas "gave good effort," he acknowledged Douglas appeared "sedated." (Tr. 920). The regulations require a narrative report accompany WAIS-IV test results commenting on whether the IQ scores were considered valid and were considered consistent with the claimant's developmental history and the degree of his functional limitations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D6a ("since the results of intelligence tests are only one part of the overall assessment, the narrative

report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."). Dr. Wilson's report does not state that Douglas' IQ scores are valid, and it does not clearly state whether the scores are consistent with Douglas' developmental history and the degree of function limitation. (Tr. 920-21).

The ALJ also noted several other factors that contradicted the low IQ score and Dr. Wilson's diagnosis of intellectual disability. The ALJ noted Douglas' records are overall inconsistent with lifelong intellectual disability. (Tr. 32). Douglas has lived independently in the past, married, assisted in raising his step-daughters, and worked successfully as an employee and a self-employed mechanic. (Tr. 32, 70-74, 222, 494, 548). Examination notes from throughout the record do not detail the severe cognitive effects contained in Dr. Wilson's notes, as Douglas is consistently described as fully alert and oriented with no difficulty communicating effectively with medical personnel or understanding medical instructions.  (Tr. 32, 343, 361, 428, 433, 447, 451, 518, 525, 528, 529, 612, 630, 644, 831). Although Dr. Wilson stated that Douglas was illiterate, the ALJ noted Douglas completed his Etowah County Community Corrections report monthly and reported reading the Bible for enjoyment. (Tr. 32, 831, 865-69, 872-900, 916). Furthermore, Dr. Wilson is the only physician in the record who diagnosed Douglas with intellectual disability rather than borderline intellectual functioning, as assessed by the ALJ. (Tr. 512-13, 515-19, 526).

Without a *valid* IQ score within the range required, Douglas has not shown he meets or equals Listing 12.05B or 12.05C. Additionally, even if Douglas' IQ score was valid, it would merely create a rebuttable presumption that he manifested deficits in adaptive functioning prior to age twenty-two, but the Commission would be allowed to present evidence relating to Douglas' work history and daily life to rebut that resumption. *See O'Neal v. Comm'r of Soc. Sec.*, 614 Fed.

Appx. 456, 459-60 (11th Cir. 2015) (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001). Here, the ALJ pointed to other evidence to rebut any such presumption, including Douglas' work history, social history, and activities of daily living. (Tr. 21-32).

**B. There is Substantial Evidence to Support the ALJ's Decision, and the ALJ Properly Discounted the Opinion of Dr. David Wilson**

A claimant's RFC determination is reserved for the Commissioner and, at the hearing level, is the responsibility of the ALJ. *See* 20 C.F.R. § 416.927(e)(2); 20 C.F.R. § 416.946(c). Here, after considering all record evidence, the ALJ determined Douglas has the RFC to perform a limited range of medium work, except that he is unable to climb ladders, ropes, or scaffolds; can tolerate no exposure to unprotected heights and no more than occasional exposure to pulmonary irritants such as dust, fumes, odors, etc.; and requires work involving no more than remembering, understanding, and carrying out simple instructions; occasional decision-making; infrequent changes; and occasional interaction with the general public. (Tr. 35). Substantial evidence supports the ALJ's determination.

Specifically, as the Commissioner reports, (1) Douglas reported he was "kicked out" and quit school because of his oppositional defiant behaviors, fighting, and suspensions – not cognitive deficits, (tr. 32, 61, 510, 516); (2) treatment records from Cherokee Etowah Dekalb Mental Health Center reveal Douglas functioned in the borderline range of intelligence, consistent with the RFC determination, (tr. 32, 512-13, 526); (3) Douglas is consistently described as alert and oriented in his treatment notes with no indication he had difficulty communicating with medical personnel or understanding medical instructions, (tr. 32, 343, 361, 428, 433, 447, 451, 518, 525, 528, 529, 612, 630, 644, 831); (4) records from Douglas' emergency room visits and Quality of Life Health Services, Inc. (Douglas' treating physician) do not reflect many of the mental complaints he alleged to other physicians in the same time period and Douglas consistently denied anxiety and

9

depression, (tr. 36, 343, 534, 540-41, 544-45, 548-49, 552, 555-57, 590, 612, 649, 671-72, 837-38, 902, 906, 909-10); (5) Douglas reported he could not tolerate being around a lot of people because it triggered panic attacks, but did not exhibit panic attack symptoms when he received treatment in the emergency room, which is often overcrowded, busy, and loud, (tr. 37, 55, 334, 342, 367, 385, 629); (6) Douglas reported experiencing psychosis, paranoia, and other symptoms as a result of his father's 2005 death, but worked as a mechanic for many years after that date and earned his highest earnings in 2011, (tr. 37, 71-72, 199-201, 509); (7) Douglas sought mental health treatment not due to his symptoms, but because he was required to as part of a community corrections program following his release from jail, (tr. 37, 861, 862); (8) Mary Arnold, Psy. D., a psychological consultative examiner, noted that Douglas was independent in his activities of daily living and functioned in the borderline range of intelligence, (tr. 38, 515-19); and (9) Robert Estock, M.D., an agency reviewing physician, opined that Douglas was able to function within the mental demands of the RFC determination, (tr. 39, 91-92, 96-97).

As alluded to above, the ALJ articulated his rationale for assigning little weight to Dr. Wilson's opinion. (Tr. 38). As a consultative examiner, Dr. Wilson's opinion is not entitled to any particular weight or deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see* 20 C.F.R. 416.927(c)(4). Nevertheless, the ALJ noted and explained how Dr. Wilson's opinion was inconsistent with the record as a whole. (Tr. 32, 38). Specifically, Dr. Wilson noted that Douglas appeared sedated during testing, but, as the ALJ explained, such a presentation was atypical for Douglas when considering the remainder of the record. (Tr. 32, 38, 343, 361, 428, 433, 447, 451, 495, 518, 525, 528-29, 534, 541, 549, 557, 612, 630, 644, 672, 759, 831). Examination notes also reveal Douglas was consistently alert and oriented and declined to report psychological symptoms. (Tr. 361, 368, 447, 451, 495, 525, 528, 451, 549, 557, 672, 831). No

other physicians diagnosed Douglas with intellectual disability, including those at Cherokee Etowah Dekalb Mental Health Center, who treated Douglas on a regular basis for two years during the relevant period. (Tr. 32, 512-13, 526).

To the contrary, treatment notes from Cherokee Etowah Dekalb Mental Health Center and the opinion of Dr. Arnold are consistent with the ALJ's conclusion that Douglas functioned in the borderline range of intelligence. (Tr. 512-13, 518, 526). Douglas' counseling reports detail coherent, in depth conversations between Douglas and his healthcare providers where Douglas discussed his concerns, plans, and goals for the future. (Tr. 525-27, 831, 923, 928). Also, Dr. Wilson noted Douglas was unable to read or spell, but Douglas reported to other healthcare providers that he was able to read English, he reported he enjoyed reading the Bible, he completed his Etowah County Community Corrections report monthly, and the record contains consent forms Douglas completed indicating he read and understood the information therein. (Tr. 32, 710-11, 724, 750, 821, 827, 831, 865-69, 872-900, 916). Accordingly, the ALJ's finding that Dr. Wilson's opinion was not supported by the evidence and his assignment of little weight is supported by the record.

Douglas fails to show that his impairments resulted in any limitation in excess of his asserted RFC for a modified range of medium work. Based on the RFC and Douglas' vocational profile, the Vocational Expert ("VE") indicated that Douglas could perform unskilled, medium jobs, such as packager, automobile detailer, and recycle salvage laborer, that exist in significant numbers in the national economy. (Tr. 40, 80-81). Therefore, substantial evidence supports the ALJ's decision that Douglas was not disabled from September 23, 2012 through July 25, 2014. (Tr. 44).

### C. Remand Based on SSR 16-3p is Not Warranted

On October 24, 2016, after the completion of briefing in this case, Douglas filed a "Motion to Remand Pursuant to Social Security Ruling 16-3p," arguing the action must be remanded so the ALJ can reevaluate the intensity and persistence of Douglas' symptoms. (Doc. 18). Upon review of the motion and relevant Social Security Rulings, Douglas fails to present any new evidence or identify any manifest error of law or fact that would justify or require remand of his case for additional consideration based on SSR 16-3p.

The Commissioner published SSR 16-3p on March 24, 2016, and explicitly established the effective date for the ruling as March 28, 2016. *See* SSR. 16-3p, 2016 WL 1237954 (March 24, 2016). The Commissioner explained the ruling replaced prior SSR 96-7p, to eliminate the use of the term "credibility" and to "clarify that subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029 at *1. Douglas has pointed to no authority that persuades the undersigned that this clarification requires remand. Because the effective date of SSR 16-3p came after the ALJ's decision, the court reviews the case under SSR 96-7p. However, an evaluation of the ALJ's decision with the clarification in mind does not require remand. The ALJ did not make any statements to indicate he assessed the credibility of Douglas' character, but rather assessed the statements he made in light of the objective medical evidence. As such, the motion, (doc. 19), is **DENIED**.

### VI. Conclusion

Because the Commissioner's decision is based on substantial evidence and the ALJ applied proper legal standards, it is **AFFIRMED** and this action will be **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 24th day of March, 2017.

                                    _____
                                    **JOHN H. ENGLAND, III**
                                    UNITED STATES MAGISTRATE JUDGE